# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CIVIL ACTION** |
| | NO: 10-4568 |
| **VERSUS** | |
| **3.17 ACRES OF LAND, MORE or LESS, SITUATED in PARISH of JEFFERSON, STATE OF LOUISIANA and WEST JEFFERSON PROPERTIES, L.L.C., et al.** | SECTION: "C" (2) *Applies to both cases* |

    **(Master Case)**

**c/w**

**Civil Action No. 10-4570**

    **(Member Case)**

## ORDER & REASONS

  This matter comes before the Court on two motions filed by the United States: (1) Motion to Strike Defenses and Objections to the Taking in West Jefferson Properties' ("WJP") Answer or in the Alternative for Judgment on the Pleadings ("Motion to Strike") (Rec. Doc. 35); and (2) Motion for a Determination of the Interests to be Valued and the Date of Valuation ("Motion for Date of Valuation"). (Rec. Doc. 36). Having considered the record, the memoranda of counsel and the law, the Court GRANTS the Motion to Strike and GRANTS the Motion for Date of

Valuation for the following reasons.

**I. BACKGROUND**

The State of Louisiana commandeered the property at issue in this consolidated case pursuant to a cooperation agreement between the United States Army Corps of Engineers ("Corps"), the West Jefferson Levee District ("WJLD"), and the Louisiana Department of Transportation and Development ("LADOTD") ("Cooperation Agreement").[1] The land was owned by WJP, the Defendant in the instant consolidated case. Through this commandeering, the Corps obtained temporary possession of the property, which it would use to perform work related to the Hurricane Protection Project. (Rec. Doc. 12 at Exs. 1, 4). The 3.17 acres at issue in Civ. No. 10-4568 were commandeered on September 24, 2007, and the 10.13 acres at issue in Civ. No. 10-4570 were commandeered on February 2, 2007. (Rec. Doc. 12 at Exs. 1, 4).

The United States alleges that after the commandeering, it negotiated to purchase the interests in the land from WJP but that this effort failed after WJP's "unilateral decision to file" a lawsuit against LADOTD and WJLD in state court on April 7, 2009 demanding compensation for the commandeering "while negotiations were ongoing."[2] (Rec. Doc. 58 at 2, note 1). WJLD filed a third party demand on the Corps, demanding that the Corps reimburse it for all judgments

---

[1] The Defendant's Answer in each case in this consolidated matter are substantively identical; therefore, for purposes of clarity, statements made in connection to the Answer in Civ. No. 10-4568 (Civ. No. 10-4568, Rec. Doc. 12) will also refer to the Answer in Civ. No. 10-4570 (Civ. No. 10-4570, Rec. Doc. 11).

[2] That case is captioned *West Jefferson Properties, L.L.C. v. West Jefferson Levee District and State of Louisiana Department of Transportation and Development*, No. 671-679 (24th Jud. Dist. Ct., La.) (Rec. Doc. 12, Ex. 5).

against WJLD arising from WJP's claims. The Corps removed the action to this Court on August 19, 2010. (Civ. No. 10-2780, Rec. Doc. 1). On October 22, 2010, Judge Barbier remanded to state court the first party claims, that is, WJP's claims against WJLD and LADOTD. (Rec. Doc. 12, Ex. 7). He also dismissed WJLD's claims against the Corps for lack of subject matter jurisdiction. (Rec. Doc. 12, Ex. 7). The parties do not dispute that WJLD's third party claims were not further litigated.

Approximately two months later, the United States instituted the instant eminent domain suits by filing a Complaint and Declaration of Taking in each. (Civ. No. 10-4568, Rec. Doc. 1; Civ. No. 10-4570, Rec. Doc. 1). Pursuant to Federal Rule of Civil Procedure 71.1, the federal rule that governs federal eminent domain procedures, the United States deposited into the registry of the Court the estimated just compensation for each set of property. The United States also filed a Notice of Condemnation in each case. (Civ. No. 10-4568, Rec. Doc. 2; Civ. No. 10-4570, Rec. Doc. 2). WJP filed its Answer in each case on June 3, 2011, approximately five months after the 20-day time limit for filing an answer. (Civ. No. 10-4568, Rec. Doc. 12; Civ. No. 10-4570, Rec. Doc. 11).

## II. LAW & ANALYSIS

### A. Motion to Strike or for Judgment on the Pleadings

In its Motion to Strike, the United States first argues that WJP's Answers should be stricken under Federal Rule of Civil Procedure 12(f) because they were untimely filed. (Rec. Doc. 35-1 at 10). WJP counters that the time limit did not run because the United States failed to personally serve WJP with the Complaint in both cases. (Rec. Doc. 46 at 1). WJP raises this

defense for the first time not in its Answers, but rather in its Opposition to the United States' Motion to Strike. (Rec. Doc. 46 at 1-2). The United States points out that WJP failed to move to dismiss under Federal Rule of Civil Procedure 12(b)(5) for failure of service of process, and that WJP did not allege this defense in its Answers, and thus, that it waived this defense under Federal Rule of Civil Procedure 12(h)(1). Besides this service of process issue, WJP does not allege that the United States' filings are procedurally deficient under Rule 71.1.

Next, the United States argues that even if WJP's Answers are not stricken for procedural deficiencies, they must be stricken because they fail to assert a valid defense. (Rec. Doc. 35-1 at 12). In particular, the United States alleges that the sole valid defense in a condemnation action is that the Government lacks the authority to take the property, and that in this case it had that authority pursuant to several Acts of Congress cited in the Declarations of Takings. (Civ. No. 10-4568, Rec. Doc. 1-1 at 3; Civ. No. 10-4570 at 1-1 at 3). WJP argues that the Declarations of Taking should be pronounced invalid because they were filed in "bad faith" for an illegitimate purpose (Rec. Doc. 12 at ¶ 48), and that the filings were "untimely."[3] (Rec. Doc. 46 at 2). Relatedly, it alleges that the cases are unnecessary because the State of Louisiana had already commandeered the property. (Rec. Doc. 12 at ¶ 48). Further, it claims, for the first time in its Opposition to the Motion to Strike, and not in its Answers, that under the Uniform Relocation

---

[3] WJP claims that the United States' "untimely filing of these takings cases forced West Jefferson Properties to file its inverse condemnation action in state court." (Rec. Doc. 45 at 2). The United States counters that it filed these suits because they were the only method for compensating WJP for the properties commandeered by the State of Louisiana. (Rec. Doc. 35-1 at 5). In particular, the United States alleges that the Cooperation Agreement does not provide that the United States must indemnify WJLD or LADOTD if they are required to compensate WJP in the state case. (Rec. Doc. 35-1 at 5). The Court declines to find the precise reasons for WJP and the United States' litigation strategies as it is unpersuaded that they have a material effect on the rights at issue in this case.

4

Act, 42 U.S.C. § 4651(4), the United States had no authority to take the land at issue until it deposited the estimated just compensation in the registry of the court. (Rec. Doc. 46 at 3).

Federal Rule of Civil Procedure 12(f) states that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, or scandalous matter." Fed. R. Civ. P. 12(f). This remedy is generally disfavored, and should be used sparingly. *See Augustus v. Board of Public Instruction of Escambia County, Fla.*, 306 F.2d 862. 868 (5th Cir. 1962) (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953). However, it is appropriate where a pleading is insufficient as a matter of law. Fed. R. Civ. P. 12(f).

In the alternative, the United States moves for judgment on the pleadings. A party may move for judgment on the pleadings after the pleadings are closed, but within such time as not to delay trial. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) is subject to the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002). In determining whether dismissal is appropriate, the court must decide whether the facts alleged in the pleadings, if true, would entitle the plaintiff to a legal remedy. *Ramming v. U.S.*, 281 F.3d 158, 162 (5th Cir. 2001); *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994). When considering a Rule 12(c) motion, the court must construe the allegations in the complaint in the light most favorable to the non-moving party, but conclusory allegations and unwarranted deductions of fact are not accepted as true. *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). Judgment on the pleadings is appropriate only if there are no disputed issues of material fact and only questions of law remain. *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887,

891 (5th Cir. 1998).

Here, the Court finds that Defendant's Answers were untimely filed. Federal Rule of Civil Procedure 71.1(e)(2) provides that a "defendant that has an objection or defense to a taking must serve an answer within 21 days after being served with notice." Fed. R. Civ. P. 71.1(e)(2). According to Federal Rule of Civil Procedure 12(h)(1), "[a] party waives any defense listed in Rule 12(b)(2)-(5) by... (B) failing to either: (i) make it by motion under [Rule 12]; or (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course." Fed. R. Civ. P. 12(h)(1). No motion to dismiss under 12(b)(5) was filed and failure of service of process was not raised in the Answers. Thus, the service of process defense was waived.

The Court also finds that, taking the defenses and objections in Defendants' Answers as true, they are insufficient as a matter of law. The only valid defense to a takings claim is that the United States did not have the authority for the taking. The Fifth Amendment of the United States Constitution states that "nor shall private property be taken for public use, without just compensation." U.S. Const. Amend. V. Thus, the United States must show (1) that Congress authorized the taking for a certain public use, and (2) that the owner was justly compensated for the property. *See Shoemaker v. United States*, 147 U.S. 282, 298 (1983) (finding that once a court finds that the use for which property is authorized is a public use, the only remaining question is the amount of just compensation).

WJP does not dispute that the United States was authorized by Congress to effectuate the instant takings, or that the use is a public use. Instead, it argues that the takings were not necessary because the land had already been commandeered by the State of Louisiana. WJP alleges that the State's commandeering orders consisted of a temporary taking, and that the

6

United States' filing of the instant eminent domain cases effected a permanent taking. (Rec. Doc. 46 at 3). WJP seems to suggest that, therefore, compensation for the temporary taking should be determined in state court, and compensation for the permanent taking should be determined by this Court. (Rec. Doc. 46 at 3). WJP states that like in *United States of America v. Sid-Mars Restaurant & Lounge, Inc.*, where this Court stayed the state court proceedings pending the resolution of the federal takings case, (a decision that the Fifth Circuit affirmed, 644 F.3d 270 (5th Cir. 2011)), in this case, the Court should also stay the state court proceedings. WJP's worry is that "there are several items of just compensation that are clearly due to West Jefferson Properties in the State court proceedings that it is anticipated the federal government will argue are not compensable in these proceedings." (Rec. Doc. 45 at 3). It adds that "no ruling by this Court ought to affect the claims against the State for elements of damages not addressed by this Court." (Rec. Doc. 45 at 3). It is unclear to this Court why staying the state court proceedings, as in *Sid-Mars*, would advance WJP's interests. Further, WJP makes no effort to show how decisions in *Olivier Plantation, LLC v. St. Bernard Parish*, Civ. No. 09-3581 (E.D. La. Jan. 6, 2012) (Rec. Doc. 46, Ex. 1), and *Olivier Plantation, LLC v. St. Bernard Parish*, Civ. No. 109-272 (34th Jud. Dist. Ct. La. Mar. 12, 2012) (Rec. Doc. 46, Ex. 2), affect its position in this case, and the Court finds these cases irrelevant.

  WJP also argues that the United States should have filed its condemnation actions earlier, although it does not state what would have been a more appropriate time, or why December 2010 was an inappropriate time in the light of its negotiations with the United States between 2007 and 2009 regarding purchase of the property. WJP also fails to address the fact that the United States filed its condemnation cases only two months after Judge Barbier's ruling on the removed

7

state court case, a decision which effectively ended the United States' involvement in the state case. WJP fails to cite authority requiring the United States to file eminent domain cases within a given time frame. Finally, WJP argues in its Opposition that the United States was prohibited, under the Uniform Relocation Act, 42 U.S.C. § 4651, from taking the property at issue until it deposited the estimated compensation. That statute states that:

> No owner shall be required to surrender possession of real property before the head of the Federal Agency concerned pays the agreed purchase price, or deposits with the court...for the benefit of the owner, an amount not less than the agency's approved appraisal of the fair market value of such property...."

42 U.S.C. § 4651(4).

WJP's argument with respect to the Uniform Relocation Act was waived because it was not contained in the Answers. Even if it was not waived, it fails because that section of the United States Code is a statement of policy, not law. The beginning of 42 U.S.C. § 4651 states that "...heads of Federal Agencies shall, to the greatest extent practicable, be guided by the following policies...." 42 U.S.C. § 4651. Furthermore, the statute cannot be used as a defense to a federal taking. 42 U.S.C. § 4602(a) ("The provisions of 4651 of this title create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation."). Therefore, WJP's Answers are insufficient as a matter of law and the United States' Motion is granted.

### B. Motion for Determination of the Interests to be Valued and the Date Valuation

In this Motion, the Government argues that the proper date of valuation of the takings for purposes of determining just compensation is the date on which each set of properties was commandeered by the State of Louisiana, that is, September 24, 2007, for the 3.17 acres at issue

in Civ. No. 10-4568 and February 2, 2007 for the 10.13 acres at issue in Civ. No. 4570. In its Opposition, WJP counters that the appropriate date for valuation is no earlier than the date the United States deposited its estimate of just compensation into the registry of the Court. In support, WJP cites to the same portion of 42 U.S.C. § 4561(4) as that cited in Section A above. As the Court explained, this provision is not law; it is merely a statement of best practices.

Case law, however, clearly demonstrates that the United States' position is the correct one. In *United States v. C.M. Dow*, the United States Supreme Court held that the taking occurs as soon as the United States obtains possession of the property, and that depositing compensation is not a prerequisite for the taking to be complete. 357 U.S. 17, 21-22 (1958). That case states:

> The usual rule is that if the United States has entered into possession of the property prior to the acquisition of title, it is the former event which constitutes the act of taking. It is that event which gives rise to the claim for compensation and fixes the date as of which the land is to be valued and the Government's obligation to pay interest accrues.

357 U.S. at 21-22. Thus, where the United States gains possession of property before filing a Declaration of Taking, the date of valuation of the property is the date on which the Government gained possession, not the date of filing or depositing just compensation.

Here, it is undisputed that the United States obtained possession of the land at issue via the commandeering orders. The Cooperation Agreement states that the United States would acquire the property via commandeering:

> For so long as commandeering is legally available under state law, DOTD is expected to obtain and provide right of entry to private lands by securing executive commandeering order(s) in accordance with La. R.S. 29:721, et seq. to accommodate current schedules for the Project; commandeering will be followed by Federal acquisition of the required real property interests by the Government in a timely manner.

(Rec. Doc. 36, Ex. 1 at 9). Furthermore, both commandeering orders state: "The Division of Administration, State Land Office, shall take immediate steps to grant the right of entry to the

property commandeered for the above purposes pursuant to this Order to ensure completion of the project without delay...." (Rec. Doc. 12, Ex. 1 at 2, Ex. 4 at 2). WJP makes no effort to distinguish this case from *Dow*, and the Court finds no reason to do so. Thus, the proper date of valuation is the date on which each set of property was commandeered.

Accordingly,

IT IS ORDERED that the United States' Motion to Strike Defenses and Objections to the Taking in West Jefferson Properties' Answer or in the Alternative for Judgment on the Pleadings is GRANTED. (Rec. Doc. 35).

IT IS FURTHER ORDERED that the United States' Motion for a Determination of the Interests to be Valued and the Date of Valuation is GRANTED. (Rec. Doc. 36).

New Orleans, Louisiana, this 16th day of April, 2012.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**